## GEORGE L. MOWEN ET AL., RECEIVERS, *vs.* JOSEPHINE NITSCH.

*A Mortgage Held Upon the Facts to be Fraudulent as to Creditors and Void Under Statute of 13 Elizabeth, chap. 5.*

Appeal from the Circuit Court for Baltimore County.

On December the thirty-first, nineteen hundred and four, the appellants, who are receivers of the Arthur B. Nitsch Brick Company, filed a bill on the equity side of the Circuit Court for Baltimore County against Josephine Nitsch wherein they assailed as invalid and fraudulent a certain mortgage executed by the Brick Company to Mrs. Nitsch on the tenth day of July, nineteen hundred and two, to secure the payment of the sum of fifteen thousand dollars alleged to be due by the mortgagor to the mortgagee. The bill charged that the Brick Company, which was a body corporate, was indebted to sundry persons between the date of its incorporation on February eighth, nineteen hundred and the date of the execution of the mortgage. That at the time the mortgage in question was given the company was insolvent. That "the giving of the said mortgage was a fraudulent contrivance on the part of the said Arthur B. Nitsch Brick Company and the said Josephine Nitsch to defraud, hinder and delay the creditors of the said Arthur B. Nitsch Brick Company in the collection of their just claims against it then existing;" and that the mortgage conveyed all the property of which the corporation was possessed. The bill further sets forth that on September the twenty-third, nineteen hundred and two, certain creditors of the Brick Company filed a bill on the equity side of the Circuit Court for Baltimore County alleging, among other things, that the company was unable to pay its obligations at maturity and was hopelessly

insolvent; and that upon the same day a decree was passed appointing the appellants receivers with power and authority to take charge of all the property and assets of the company which, after filing their bond, they proceeded to do. It is also alleged that on December the thirty-first, nineteen hundred and four, the Circuit Court for Baltimore County, sitting in equity, authorized and directed the receivers to institute such proceedings in equity in that Court as they might be advised would be proper and right for the purpose of having the aforementioned mortgage set aside, and declared illegal and void, for the benefit of the creditors of the Brick Company. The relief asked was a decree setting aside the mortgage and declaring it fraudulent and void. There was also a prayer for general relief included in the bill. By the seventh paragraph of the bill it was charged that the mortgage for fifteen thousand dollars included as a part of the sum just named an indebtedness of nine thousand dollars due by Arthur B. Nitsch personally to the appellee and secured to her by a mortgage from him upon his individual interest in the estate of his deceased father.

The appellee, who was the defendant below, first answered the bill, then withdrew her answer and demurred. Upon the demurrer being overruled she refiled her answer. In replying to the seventh paragragh of the bill the appellee admitted its averment to be true, and therefore admitted that the fifteen thousand dollar mortgage included the nine thousand dollar indebtedness due by Arthur B. Nitsch personally to the appellee and secured by a mortgage on his interest in his father's estate. At the final hearing, however, in the lower Court that admission of the answer was amended. The material allegations of the bill were denied by the answer, and after a replication had been filed quite a large volume of testimony was taken. The Circuit Court denied the relief sought and dismissed the bill. The receivers thereupon obtained leave to enter an appeal to this Court, and pursuant to that leave they have brought the record here so that the decree dismissing their bill of complaint may be reviewed.

There are two grounds upon which the validity of the as-

sailed mortgage is questioned; and they are first, that it was a preference which, inasmuch as it was executed within four months prior to the filing of the creditor's bill on September the twenty-third, nineteen hundred and two, was invalid under the provisions of the Code; and secondly, that it was fraudulent and void under the *Statute of 13 Elizabeth, ch. 5.*

First, then, as to whether the mortgage is void as a prohibited preference under the provisions of the Code to which reference will be made in a moment. Prior to the *Act of 1896, ch. 349,* now forming *sec. 377 of Art. 23, Code of 1904,* a corporation was not in any respect within the scope of the State insolvent laws, nor is it yet amenable to that system; but since the adoption of the Act and on the terms therein prescribed, all corporations, other than railroad companies, upon appropriate proceedings against them *in a Court of equity,* are brought within the operation of a provision of that system (but not under the system itself), in so far forth only as respects the preference of one creditor over another when the corporation is insolvent.

That provision of the insolvent law is engrafted on the jurisdiction of a Court of equity precisely as though the same provision had been independently enacted in identically the same words without any allusion whatever to the insolvent laws. It is under the above section and the preceding one, 376, and under *sec. 22, Art. 47,* that proceedings must be had against a corporation to avoid and set aside a prohibited preference. The questions, arising under those sections of the statutes whilst interesting and important, are not necessarily involved in the decision of this case, if the second of the grounds upon which the mortgage now being attacked is assailed is a tenable one under the evidence contained in the record. It may be appropriate to remark, before proceeding to discuss the second of the two grounds above alluded to, that the evidence in the record is ample and abundant to establish beyond any doubt or dispute the hopeless insolvency of the Brick Company at the time the mortgage was executed; and whilst apart from the provisions of the insolvent laws and the terms of *sec. 377 of Art. 23* of the Code, the mere fact that a corporation

debtor is insolvent will not prevent it from securing a pre-existing creditor by giving to the latter a priority over other creditors, if the transaction be made in good faith, upon a valid consideration and without a fraudulent intent; yet if the security given was without consideration, or was created with a view to hinder and delay creditors it will not be permitted to stand when properly assailed. This has been so often ruled that it has become axiomatic and needs no reference to adjudged cases to support it. But a few words will be required altogether apart from the concessions of the answer to the creditor's bill which whilst protesting that the company was solvent admitted the existence of facts which in law constitute insolvency, to show that it was when it executed the mortgage in a condition of hopeless insolvency. It owed apart from the mortgage over thirty-two thousand five hundred dollars, and its assets amounted to twenty-six thousand two hundred dollars, and it was wholly unable to meet and pay its obligations as they matured, besides being without sufficient credit to borrow money with which to continue its business. No one can doubt in the teeth of these facts that the company was insolvent.

Coming now to the second ground of attack without further allusion to the first, we are of opinion that the mortgage should have been pronounced null and void under the Statute of Elizabeth in view of the evidence by which its *bona fides* and the verity of its consideration are impeached: It will not be necessary to recite that evidence at any length, because, first, no useful purpose would be subserved thereby, and because, secondly, a brief reference to a few salient facts will be quite sufficient to expose the falsity of the consideration and reveal the bad faith of the transaction. On July the first, 1902, the board of directors of the company adopted a resolution whereby the company was authorized to give a mortgage to Mrs. Josephine Nitsch for the sum of fifteen thousand dollars "in payment for nine thousand dollars due upon the brick plant turned into the company and intended to be subject to a mortgage for said amount, and for cash heretofore loaned to the company, and the balance thereof to secure the

repayment of cash to be advanced the company at the time of execution of said mortgage." According to this resolution there were three items which made up the amount of the consideration of the mortgage; viz:, a nine thousand dollar mortgage; cash previously loaned to the company, and cash to be advanced the company when the mortgage should be given. In the testimony we find no trace of a nine thousand dollar mortgage due to Mrs. Nitsch by the Brick Company though it appears that Arthur B. Nitsch owed to his mother that sum of money which was secured by a mortgage, not upon the property of the Brick Company, but upon the individual interest of Arthur B. Nitsch in the estate of his father. If there was no mortgage for nine thousand dollars due to the appellees and which was a lien on the company's property the statement in the resolution that the amount of such a mortgage was to form part of the fifteen thousand dollars to be secured by the mortgage now assailed, was groundless and untrue. A false statement as to what constituted the major portion of the consideration stamps the transaction in its very inception as fraudulent; because if an honest and genuine indebtedness to the extent of the expressed consideration had really existed on the part of the company to Mrs. Nitsch, there would have been neither an occasion nor an inducement to assert or to rely on one which was ficticious or spurious. The admission made by Arthur B. Nitsch to the receivers to the effect that the nine thousand dollar mortgage which was included in the fifteen thousand dollar consideration was the identical mortgage which he had given to his mother upon his individual interest in his father's estate, affirmatively shows that more than half of the indebtedness which the assailed mortgage purports to secrue was an indebtedness of Arthur B. Nitsch himself and not of the company at all. But there is another circumstance which conclusively proves that the nine thousand dollars as well as the residue of the fifteen thousand dollars not only represented the personal indebtedness of Arthur B. Nitsch to his mother, but further that Mrs. Nitsch *knew* the whole fifteen thousand dollars were due to her by her son and not by the company, and that she in the most

formal and deliberate manner acted upon that knowledge in a way wholly inconsistent with the pretence that it was the company's and not the son's indebtedness which the impeached mortgage was given to secure. The record shows that on October the seventeenth, 1902, involuntary proceedings in bankruptcy against Arthur B. Nitsch were begun in the District Court of the United States for the District of Maryland and that in December following he was adjudicated a bankrupt. It further appears that amongst the claims filed by his creditors was a large one presented by Mrs. Nitsch, the appellee, and to her claim is annexed her affidavit that the debt had not been paid and that she had not received any manner of security for the same. Fourteen items of that claim aggregating about five thousand dollars are precisely the same items which are included in a statement produced in evidence in this case and purporting to set forth the item making up a part of the consideration of the assailed mortgage. Of course if the fourteen items just alluded to represented the individual debts of Arthur B. Nitsch, as Mrs. Nitsch unqualifiedly swore in her affidavit that they did, they could not also be due by the Brick Company, and the actual inclusion of them in the mortgage and the attempt to charge them against the assets of the company tainted the mortgage with the bad faith which such an effort necessarily indicated. Here then we have first, a purely mythical mortgage indebtedness of nine thousand dollars asserted to be a part of the fifteen thousand dollar consideration, when no such mortgage or lien or debt in fact existed; and secondly an alleged indebtedness of about five thousand dollars for advances made to the company, when the creditor herself has made oath that the precise items making up that sum are due to her not by the mortgagor company but individually by Arthur B. Nitsch, and finally the fact that no advances were made when the mortgage was executed. It surely needs no citations from adjudged cases to sustain the proposition that a mortgage founded on such a pretended consideration is null and void as respects subsisting creditors whose confessedly just claims would go unsatisfied if the mortgage were permitted to prevail.

There is no doubt that Mrs. Nitsch advanced to her son, Arthur B. Nitsch, considerable sums of money which he unquestionably used in conducting the business of the company, but that did not make the company her debtor.    Two references to the testimony will show how the borrowing and lending transactions were conducted, and that the result was, in the final development, not that Mrs. Nitsch was a creditor of the company by reason of the loans, but was a creditor of her son, in whose bankruptcy proceedings she filed her properly verified claim. In the testimony of Roman C. Nitsch the following question and answer will be found: "Isn't it a fact that your mother in advancing this money, I will ask you, if you know, isn't it a fact when your mother loaned the money, you say you and your sister drew the checks, she loaned the money to Arthur B. Nitsch upon the theory that he controlled the property at Landsowne and owned nine-tenths of the stock, and he was practically the company, wasn't that the theory, is that a fact? Answer, she loaned him the money that way, yes, sir." Upon cross-examination Arthur B. Nitsch was asked, "not having enough of your own funds you borrowed from time to time large sums from your mother?    Answer, yes, sir.    Question, she loaned it to you, and you used it for the company, isn't that it?    Answer, yes, sir."    It is obvious, then, that whatever relation was created between Mrs. Nitsch and Arthur B. Nitsch by these loans, they did not cause the company to become *her* debtor on account of them; and the mortgage which undertook to bind the property of the corporation for their payment, to the exclusion of the actual creditors of the corporation, must be stricken down and annulled as fraudulent and void so far as these last-named creditors are concerned.

Opinion by McSHERRY, C. J., filed December 7th, 1905. *John P. Poe* and *William Colton*, for the appellant, *Francis I. Mooney* and *Meyer Rosenbush*, for the appellee.